UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
Bina Ahmad,

                                  Plaintiff,

     -v-

The City of New York, New York City Police
Department Officer ("P.O.") Michael Sikora
(Shield No. 10643), P.O. Joseph Napolitano,
(Shield No. 21595), in their individual capacities,

                                Defendants.
-------------------------------------------------------------------x

**AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL**

Index No. 15 Civ. 7157

Plaintiff Bina Ahmad, through her attorney David B. Rankin of Rankin & Taylor, PLLC, as and for her amended complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, and her rights under the Privacy Protection Act, 42 U.S.C. § 2000aa, *et seq*.

2. Plaintiff seeks an award of compensatory, punitive, actual, and liquidated damages, and attorneys' fees.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, and under the Privacy Protection Act, 42 U.S.C. § 2000aa, *et seq*.

1

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claim arose in the Eastern District of New York.

5. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §§ 1988 and 2000aa-6(f).

## PARTIES

6. Plaintiff Bina Ahmad ("Ahmad") was at all times relevant to this action a resident of the County of Kings in the State of New York.

7. Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

8. NYPD Officer ("P.O.") Michael Sikora ("Sikora") (Shield No. 10643), P.O. Joseph Napolitano, ("Napolitano") (Shield No. 21595) are and were at all times relevant herein, officers, employees and agents of the NYPD.

9. The individual defendants are being sued herein in their individual capacities.

10. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as

officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## STATEMENT OF FACTS

11. Ms. Ahmad was falsely arrested by P.O. Sikora around the Kingston-Throop Avenue subway station at approximately 9:00 p.m. on October 11, 2013 in the County of Kings in the State of New York.

12. Ms. Ahmad observed two men being detained by P.O. Sikora and P.O. Napolitano.

13. In order to document the encounter, Ms. Ahmad used her cell phone to take photographs of the detention.

14. After she advised the detainees of their rights, Ms. Ahmad began to leave the vicinity.

15. The individual defendants then handcuffed Ms. Ahmad, upon information and belief, in retaliation for her First Amendment protected speech informing the men of their rights and her documentation of the event with her cell phone.

16. The individual defendants failed to intervene and / or were acting in concert with what was a clearly unconstitutional arrest of Ms. Ahmad.

17. One of the photographs taken by Ms. Ahmad was destroyed by an individual defendant.

18. P.O. Sikora swore falsely on a Criminal Court Complaint charging Ms. Ahmad with various criminal acts.

19. Ms. Ahmad spent nearly 20 hours in the defendants' custody as a result of her arrest.

20. The charges against Ms. Ahmad were dismissed.

21. As a result of her handcuffing and arrest, Ms. Ahmad was deprived of her liberty, experienced pain, suffering, mental anguish, and humiliation.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
**(Against the individual defendants)**

22.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

23.     By the individual defendants' conduct and actions in falsely arresting plaintiff, arresting plaintiff in retaliation for protected activity, fabricating evidence against plaintiff, abusing the criminal process, and by failing to intercede to prevent the complained of conduct, defendants acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

24.     As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM
## *MONELL* CLAIM AGAINST DEFENDANT CITY THROUGH 42 U.S.C. § 1983
**(Against the City of New York)**

25.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

26.     The individual defendants' acts and omissions described above were carried out pursuant to the City's overlapping customs and practices which were in existence on October 11, 2013 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

27. The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

28. The aforementioned custom and practice of the City and the NYPD include, but are not limited to making retaliatory arrests against persons who lawfully photograph, document, or record police activity.

29. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

**Journalists and Photographers**

a. **May 30, 2007 / Robert Carneval / Carneval v. City of New York, 08 CV 9993 (DAB) (AJP) (S.D.N.Y.)**
A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

b. **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-those-arrested-during-zuccotti-park-raid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011) http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

c. **November 15, 2011 / Timothy Fitzgerald / Rodriguez v. Winski, 12 CV 3389**

5

**(NRB) (S.D.N.Y.)**
On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

d. **August 4, 2012 / Robert Stolarik**
Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

e. **September 17, 2012 / Christopher Faraone / Faraone v. City of New York et al, 13 CV 09074 (TPG) (S.D.N.Y.)**
Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

f. **September 15-17, 2012 / Julia Reinhart, Charles Meacham, and John Knefel**
Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

g. **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / Rodriguez v. Winski, 12 CV 3389 (NRB) (S.D.N.Y.)**
On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

h. **March 2012 / Unknown**
In March of 2012, a cameraman from WABC-TV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer*

*At Crime Scene*, Photography Is Not A Crime (March 22, 2012) http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/

i.  **November 27, 2012 / Angel Zayas / <u>Zayas v. Kelly</u>, 13 CV 08808 (JMF) (S.D.N.Y.)**
    On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548

j.  **January 16, 2013 / Shimon Gifter**
    A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24, 2013) http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

k.  **April 19, 2013 / Justin Thomas / <u>Thomas v. City of New York</u>, 13 CV 6139 (SJ) (LB) (E.D.N.Y.)**
    A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera. Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

    **<u>Concerned Citizens</u>**

l.  **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / <u>Bandele v. The City of New York</u>, 07 CV 3339 (MGC) (S.D.N.Y.)**
    Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A96

19C8B63.

m. **September 29, 2009 / Dennis Flores / <u>Mesa v. City of New York</u>, 09 CV 10464 (JPO) (S.D.N.Y.)**
On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

n. **October 17, 2010 / Anibal Ortiz / <u>Ortiz v. City of New York</u>, 11 CV 7919 (JMF) (S.D.N.Y.)**
On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

o. **July 11, 2011 / Caroline Stern and George Hess / <u>Stern v. City of New York</u>, 12 CV 04863 (SAS) (S.D.N.Y)**
On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012) http://nypost.com/2012/07/08/couple-handcuffed-jailed-for-dancing-on-subway-platform-lawsuit/

p. **April 27, 2012 / John Runnells / <u>Runnells v. City of New York</u>, 13 CV 2904 (KBF) (S.D.N.Y.)**
On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again, his camera was seized and the footage deleted.

q. **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**
On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stop-and-frisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (October 17, 2013) http://www.nydailynews.com/new-york/brooklyn/brooklyn-precinct-log-book-mystery-article-1.1487721

r. **August 2012 / Unknown**
In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (August 17, 2012) http://photographyisnotacrime.com/2012/08/17/nypd-cop-fails-at-intimidating-man-from-video-recording-police-headquarters/

8

s. **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re-arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

t. **March 2012 / Unknown**
In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray.
Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012) http://photographyisnotacrime.com/2012/03/18/nypd-takes-break-from-beating-man-to-threaten-videographer-with-pepper-spray/.

u. **September 28, 2012 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP) (JLC) (S.D.N.Y)**
On September 28, 2012, at approximately 8:55 p.m., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage.

v. **March 13, 2013 / Ed Garcia Conde**
Ed Carcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man. Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

w. **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming. Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

x. **June 5, 2013 / Rahul Saksena / <u>Seksena v. The City of New York</u>, 14 CV 5129 (JBW) (LB) (E.D.N.Y.)**
On June 5, 2014, at approximately 10:00 p.m., Mr. Saksena was arrested in retaliation for filming a civilian police interaction in the Bushwick section of Brooklyn.

y. **August 26, 2013 / Jonathan Harris**
NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the

9

    officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

  z. **September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV 1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (October 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=0.

  aa. **September 21, 2013 / Michael Guzman / <u>Guzman v. The City of New York</u>, 15 CV 2662 (KAM)(VMS)(E.D.N.Y.)**
On September 21, 2013, at approximately 5:50 p.m., Mr. Guzman was in the Borough Hall subway station and observed members of the NYPD detain a number of individuals. He began to records the interactions the officers were having with the detainees. In response to his recording the officers' conduct, he was arrested.

  bb. **September 25, 2013 / Debra Goodman / <u>Goodman v. The City of New York</u>, 14 CV 5261 (CM) (S.D.N.Y)**
Debra Goodman was arrested by two NYPD officer for using her cellphone to videotape an interaction between the officers and a homeless woman.

30. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 25.

31. Defendant City knew or should have known that the acts alleged herein would deprive the plaintiff of her rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

32. Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

10

33. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including former-Commissioner Raymond Kelly, did not take steps to terminate these policies, practices and/or customs, did not discipline individuals who engaged in such polices, practices and/or customs, or otherwise properly trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

34. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

35. Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

36. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

## THIRD CLAIM
### PRIVACY PROTECTION ACT – 42 U.S.C. § 2000aa, *et seq*.
(Against the City of New York)

37. Plaintiff repeats and re-alleges each of the foregoing paragraphs with the same force and effect as if set forth fully herein.

38. One or more of the individual-defendants, while acting within the course and scope of their employment and under color of law, destroyed documentary materials and/or work product materials which the officer-defendants reasonably believed or should have reasonably believed plaintiff intended to use to disseminate the above-described incident to members of the public.

39. As a result, plaintiff was damaged and otherwise harmed as set forth above.

///

///

## JURY DEMAND

40. Plaintiff demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

    a. That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation;

    b. That she receive liquidated damages from the City of New York;

    c. That she be awarded punitive damages against the individual defendants;

    d. That she be compensated for attorneys' fees and the costs and disbursements of this action; and

  e.  For such other further and different relief as to the Court may seem just and proper.

Dated:  February 19, 2016
     New York, New York

               Respectfully submitted,

            By:  _____
               David B. Rankin
               Rankin & Taylor, PLLC
               11 Park Place, Suite 914
               New York, New York 10007
               t: 212-226-4507
               e: david@drmtlaw.com

               *Attorneys for the Plaintiff*